UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NICKERIA FRANKLIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 2:22-cv-119-GMB |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION**

On March 12, 2020, Plaintiff Nickeria Franklin[1] filed an application for Supplemental Security Income ("SSI"). Her alleged disability onset date is March 12, 2020.[2] Franklin's application for benefits was denied at the initial administrative level and on reconsideration. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing by telephone on May 26, 2021, and denied Franklin's claims on June 18, 2021. Franklin requested a review of the ALJ's decision by the Appeals Council, which declined review on December 3, 2021. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of December 3, 2021.

---

[1] The caption of the complaint incorrectly listed the plaintiff's last name as "Frankin" despite spelling her name correctly elsewhere. The Clerk of Court is DIRECTED to update the docket to reflect that the plaintiff's last name is "Franklin."

[2] Franklin's original alleged disability onset date was November 1, 2017, but she later amended her alleged onset date to March 12, 2020. R. 10.

Franklin's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 11. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[3]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted).

---

[3] In general, the legal standards are the same whether a claimant seeks disability insurance benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

"Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human*

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Franklin bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?

> (5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III.  RELEVANT FACTUAL BACKGROUND

Franklin lives in Birmingham, Alabama with her three young children, who are 7, 12, and 14 years old. R. 38 & 43. Franklin was born in 1984, so she was 35 years old on her alleged onset date. R. 19. Her primary complaints are migraines, muscle spasms, chronic back pain, vision problems, and depression. R. 41. In her disability report, Franklin alleged the following medical conditions: multiple sclerosis ("MS"), depression, migraines, and left eye problems. R. 194 & 223.

Franklin completed high school, and she has past work experience as a certified nursing assistant, hair stylist, and laundry worker. R. 44. At the hearing on May 26, 2021, Franklin testified that she has "quite a bit of pain," migraines, muscle

spasms, back pain, vision problems, and depression. R. 41. She said she has migraine headaches four to five times per week lasting "pretty much all day," with the pain level at eight on a scale of zero through ten. R. 41. Franklin has relapsing MS, for which she sees Emily Riser, M.D., a neurologist at Alabama Neurology Associates. R. 16. Because of her MS, Franklin experiences muscle spasms in her legs as well as weakness, fatigue, and numbness. R. 42. She also testified that she struggles daily with symptoms of depression. R. 42.

Franklin said that her leg pain prevents her from standing for more than 15 minutes at a time and from sitting for more than 60 minutes at a time. R. 42. She reported that she can lift and carry about ten pounds. R. 42. She also testified that she generally rests for about three to four hours each day due to the weakness and fatigue in her legs. R. 43. Although Franklin is the primary caregiver for her three children, she explained that she receives help with housework from her son, her nephew, and her sisters. R. 43. She stated that somebody is "always around the clock with [her]" to provide help. R. 43. As for her mental impairments, Franklin testified that her depression makes her feel withdrawn and that she has no desire to go anywhere or do anything. R. 43.

The ALJ issued his decision on June 18, 2021. R. 7. Under step one of the five-step evaluation process, he found that Franklin has not engaged in substantial gainful activity since March 12, 2020. R. 12. At step two, the ALJ concluded that

Franklin suffers from the severe impairments of relapsing MS, obesity, anemia, migraine headaches, and major depressive disorder.[4] R. 12. The ALJ noted that these medically determinable impairments significantly limit Franklin's ability to perform basic work activities. R. 12. However, at step three of the analysis, he concluded that none of Franklin's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 13.

Before proceeding to the fourth step, the ALJ determined that Franklin had the residual functional capacity ("RFC") to perform a limited range of light work. R. 14. More specifically, the ALJ found that Franklin had the following limitations with respect to light work, as defined in 20 C.F.R. § 404.1567(b):

> She can have no exposure to hazardous machinery, unprotected heights, or commercial driving. She cannot climb ladders, ropes, or scaffolds. She can have occasional exposure to extreme temperatures, wetness, and excessive vibration such as you might find in an industrial setting. She can occasionally climb ramps and stairs and can frequently balance, stoop, kneel, crouch, and crawl. She can understand, remember, and carry out simple instructions. Interaction with the public should be occasional. Changes in the work setting should be infrequent, or less than occasional, meaning that the duties of the job can be mastered in 30 days or less. If afforded breaks every two hours (mid-morning, lunch, and mid-afternoon), she can sustain those activities over an eight-hour workday.

R. 15. At the fourth step, the ALJ considered Franklin's age, education, work experience, and RFC in determining that she was not capable of performing her past

---

[4] The ALJ found Franklin's other alleged impairment, optic neuritis, to be non-severe. R. 12. Franklin does not challenge this finding on appeal.

relevant work. R. 19.  However, the ALJ determined there were other jobs existing in significant numbers in the national economy that Franklin could perform, including work as a hand packer and housekeeper or cleaner. R. 20.  Therefore, the ALJ concluded that Franklin was not disabled within the meaning of the Social Security Act from March 12, 2020, through the date of the decision. R. 21.  Based on these findings, the ALJ denied Franklin's application. R. 7 & 21.

## IV. DISCUSSION

Franklin presents one issue[5] on appeal: whether the ALJ properly evaluated the credibility of her subjective complaints of pain consistent with the Eleventh Circuit pain standard. Doc. 15 at 5.  The Commissioner contends that substantial evidence supports the ALJ's subjective complaint analysis and findings. Doc. 16 at 6.  For the following reasons, the court finds that substantial evidence does support the ALJ's opinions and that the ALJ applied the proper standards to reach his conclusions.

In addressing a claimant's subjective description of pain and symptoms, the

---

[5] Franklin's brief does not clearly delineate her arguments and moves from one point to the next in a haphazard fashion.  The court has attempted to address any argument Franklin fully developed in her briefing.  However, the court notes that Franklin makes passing reference to other potential alleged errors by the ALJ without developing those arguments in detail.  The court does not address issues made in passing or without arguments containing an explanation of the asserted error, citation to the record, and supporting case law; these arguments are deemed to have been abandoned. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (holding that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed").

law is clear:

> [T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *see also* 20 C.F.R. §§ 404.1529. If a claimant satisfies the first part of the test, the ALJ must evaluate the symptoms' intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 20 C.F.R. §§ 416.929(c) & (d). While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including his history, medical signs and laboratory findings, and statements by medical sources or other sources about how his symptoms affect him. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ is not required to conduct an explicit symptom analysis, but the reasons for his findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d

9

1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id*. (citation omitted).

The ALJ found that Franklin's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 15–19. This determination is supported by substantial evidence.

## A.   Physical Impairments

The ALJ thoroughly examined the medical evidence in the context of Franklin's course of treatment in finding that her subjective complaints of pain were not entirely credible. R. 15–19. Specifically, the ALJ found that her complaints of disabling physical pain due to MS were inconsistent with the following medical evidence:

- In October 2018, Franklin's neurologist, Dr. Riser, noted that an MRI showed an increased disease burden, including an active lesion on her brain, and decided to switch Franklin from one medication, Rebif, to another, Tysabri. R. 497 & 504. But Franklin failed to follow up with Dr. Riser for more than one year, reportedly due to an issue with her Medicaid referral. R. 497.
- In December 2019, MRI imaging of Franklin's brain revealed that she had a new lesion consistent with a relapse. R. 504. Treatment notes indicated that Franklin had been on Rebif, but she admitted she was not compliant with the medication. R. 504.
- Also in December 2019, Franklin said she was willing to try a new type of MS medication. R. 504. But at that same visit, Franklin refused to try Tysabri

and Ocrevus, so Dr. Riser restarted her on Rebif. R. 509. The records from this visit show that Franklin's "JCV [was] negative and other labs looked normal." R. 504.

- Upon further examination in December 2019, Franklin had some bilateral lower extremity weakness, but motor testing revealed no deficits, and her deep tendon reflexes were intact. R. 508.
- On March 31, 2020, Franklin had a follow-up visit with Dr. Riser. R. 511. Treatment notes show that Franklin had resumed Rebif without any adverse side effects. R. 511. Dr. Riser instructed Franklin to continue the Rebif and started her on appropriate medication for fatigue and muscle spasms. R. 514.
- In December 2020, at a visit with a primary care provider, Franklin ambulated with a cane, but she appeared healthy and her gait and station were normal. R. 593.
- In January 2021, updated MRIs of Franklin's brain showed diffuse white matter changes and associated diffuse cortical atrophy consistent with her known history of MS. R. 632.
- Also in January 2021, at a follow-up visit with Dr. Riser, treatment notes indicate that Franklin ambulated with no assistive device and was stable overall from a neurological perspective. R. 625. Franklin was still on Rebif without side effects at that time. R. 625.

As to Franklin's anemia and migraine headaches, her complaints of disabling pain and symptoms were inconsistent with the following medical evidence:

- In February 2020, Franklin first consulted Dr. Mooney at Hematology and Oncology Associates of Alabama for complaints of anemia and migraine headaches. R. 461 & 522. The treatment plan was to start IV iron infusions and follow up in approximately four weeks. R. 462.
- On March 17, 2020, at her follow-up visit with Dr. Mooney, treatment notes show that Franklin did well with IV iron infusions, but she was still fatigued and had recently taken steroids for an MS flare. R. 459. Franklin reported headaches to Dr. Mooney. R. 459. However, at a visit to Dr. Riser on March 31, 2020, Franklin reported no headaches. R. 512.
- On June 5, 2020, Franklin attended a follow-up visit with a primary care physician, Dr. Jackson, and requested a refill of Imitrex for her migraines. R. 562. With this physician, Franklin reported having headaches every day

11

- but said that she only used Imitrex approximately six times per month when her headaches were severe. R. 562. At this appointment, Franklin reported headaches and joint pain but no back pain. R. 562.
- On June 9, 2020, at an appointment with Dr. Mooney, Franklin's medical records show that she complained of back pain but not headaches or joint pain. R. 547.
- In June and August of 2020, follow-up visits with Dr. Mooney revealed that Franklin was "doing well; energy remain[ed] improved; no recent MS flares." R. 547 & 580.
- On September 17, 2020, at a follow-up visit with her ophthalmologist and on September 21, 2020, at a follow-up visit with Dr. Riser, Franklin again reported no headaches. R. 584 & 624.
- In November 2020, at a follow-up visit for her anemia, medical records show that Franklin reported mild fatigue but was able to stay active. R. 620. Franklin reported headaches and back pain but had no recent MS flares. R. 620.
- On January 4, 2021, at a follow-up visit with Dr. Riser, Franklin ambulated with no assisted device, was stable overall from a neurological perspective, and reported no headaches. R. 625–26.

The ALJ also considered Franklin's course of treatment in finding that her complaints were not entirely credible. R. 15–20. He explained that Franklin's anemia and fatigue had been conservatively treated with iron supplementation and she responded well to these treatments. R. 17, 459, 517, 520, 547, 580 & 620. For example, Franklin went to a follow-up visit with her hematologist in March 2020, and her hematologist noted that she did well with iron infusions even though Franklin still felt fatigued and had experienced a recent MS flare. R. 459. Next, in August 2020, treatment notes from Franklin's hematologist indicate that she reported she was doing well with improved energy and no recent MS flares. R. 580.

Then, in November 2020, treatment notes indicate that Franklin reported continued improvement and an ability to stay active. R. 620.  As to Franklin's MS, the ALJ also explained that examination findings from a visit to her primary care physician in December 2020 revealed that she presented with a cane, but her gait and station were normal. R. 17, 593.  And on several occasions, treatment notes describe Franklin as independent as to her self-care and mobility, and without the need for an assistive device. R. 17, 479, 485 & 625.

As to Franklin's migraine headaches, the ALJ explained that in June 2020, she reported daily headaches but only used Imitrex six times per month for these headaches. R. 17.  The ALJ further noted that Franklin did not consistently report headaches to her neurologist and had multiple visits documenting no complaints of headaches. R. 17, 481, 487, 493, 500, 507, 512 & 626.  Although not specifically cited by the ALJ, other relevant doctors' visits and medical records indicate that Franklin reported no headaches from June 9, 2020, through at least September 21, 2020.

On this record, the court finds that substantial evidence supports the ALJ's conclusion about Franklin's subjective complaints of pain due to her MS, anemia, and headaches.  MRI results from January 2021 were consistent with Franklin's known history of MS and medical records from this timeframe indicate she was stable from a neurological perspective. R. 625 & 632.  Periodic examinations

confirmed Franklin had a normal gait and station along with generally intact sensations. R. 386, 390, 409, 412, 422, 567 & 593. *See Belle v. Barnhart*, 129 F. App'x 558, 560 (11th Cir. 2005) (noting that normal findings on examination support an ALJ's decision to discount subjective complaints). The ALJ also considered the inconsistencies between Franklin's statements and the evidence in the record by medical sources. R. 17; *see* 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4). Franklin's hematologist chose conservative treatment for her anemia, which resulted in documented improvement. R. 461, 459, 547, 580 & 620; *see Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (finding substantial evidence to discredit the claimant's testimony regarding pain where his course of treatment was conservative).

**B.     Mental Impairments**

Franklin also complains that the ALJ improperly evaluated the limiting effects of her mental impairments. Doc. 15 at 13. The court again disagrees. Franklin's complaints of disabling symptoms due to her depression, such as excessive sleepiness and an inability to concentrate, are inconsistent with the following medical evidence:

- In August 2019, progress notes from Eastside Mental Health Center show that Franklin admitted she was not taking her medication and, as a result, her

psychiatrist was reluctant to increase the dosage. R. 318.
- In October 2019, progress notes indicate that Franklin was attentive, and she reported good and improved sleep. R. 313.
- Psychiatry notes from February 19, 2020, indicate Franklin was appropriately dressed and groomed, calm, cooperative, and attentive. R. 309.
- In August 2020, Franklin's psychiatrist noted that she was unsure of Franklin's compliance with her medication but started her on a different medication because nothing seemed to be effective. R. 602.
- At a follow-up in October 2020, Franklin indicated that she felt about the same on her new medication, Lexapro, but that she had improved sleep patterns. R. 604. The updated treatment plan was to switch Franklin from Lexapro to another medication, Trintellix. R. 608.
- In December 2020, medical records indicate that Franklin demonstrated fair judgment and a calm and cooperative demeanor. R. 610. Franklin's psychiatrist noted that Franklin seemed to have "treatment resistant depression," but she was otherwise well-oriented with normal speech, demonstrated appropriate attention, and had a goal directed thought process. R. 609.

On this record, substantial evidence supports the ALJ's determination relating to Franklin's mental impairments. The ALJ properly considered and articulated his opinion in accordance with the applicable standards and regulations. Despite Franklin's treatment for depression, the ALJ noted that she experienced no psychosis and required no inpatient psychiatric treatment. R. 18. In addition, at Franklin's most recent visit to her psychiatrist, the record shows that she was oriented, her speech was normal, her thought process was goal oriented, and her attention and thought content were appropriate. R. 18 & 609. Other treatment notes reveal similar insights and show that Franklin was calm and cooperative. R. 18, 606 & 609–10.

The ALJ also reviewed treatment notes from Franklin's psychiatrist, who

15

questioned whether Franklin was compliant with her medication, noting that the medication seemed to be ineffective. R. 18 & 602. Upon further examination of the record, the ALJ explained that Franklin failed trials of Prozac and Lexapro. R. 18. In addition, at her follow-up visit to her psychiatrist in December 2020, Franklin complained that her new medication, Trintellix, was not making any difference, but the record shows that she had been taking it for barely one month. R. 608. In making his subjective symptom findings related to Franklin's mental impairments, the ALJ also reviewed the opinions of the State agency Psychological Consultants and the Third Party Function Report submitted by Franklin's sister, questioned Franklin at the hearing, and considered other medical evidence and evidence in the record. R. 18–19.

## C. Additional Considerations

Finally, the record reflects that Franklin engaged in a somewhat normal level of daily activity. Franklin visited daily with her mother, sister, and oldest son, and she attended medical appointments frequently. R. 14 & 234–35. Franklin denied any problems with understanding instructions but reported limitations with her memory and her ability to follow instructions. R. 13. However, the record reflects that Franklin reported she had the ability to prepare simple meals, wash clothes, pay bills, and independently provide information about her health to her medical providers. R. 13, 235 & 561. And although Franklin reported that she received some

help from her family, she also testified that she is the primary caregiver for her three children. R. 13 & 43. Her ability to accomplish these activities further undermines her claims of disabling limitations. *See Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019) (affirming that subjective complaints are inconsistent with a record of simple daily activities).

As for the evidence supporting Franklin's subjective complaints, most of the evidence she highlights consists of her own complaints to various medical providers and not the findings or opinions of the doctors. *See, e.g.*, Doc. 15 at 9–14. Moreover, Franklin's own complaints to her medical providers often were inconsistent. *See* 20 C.F.R. § 416.929(c)(3)(i) (stating that the ALJ properly considers consistency with objective medical evidence when evaluating subjective symptoms). For example, on August 11, 2020, Franklin reported to one physician that she was doing well and the iron infusions had continued to improve her energy level, but on the very next day, she complained to a different physician of having low energy and sleeping in bed all day. R. 580 & 600. The ALJ noted an instance in December 2020 when Franklin presented with a cane but her gait and station were normal on examination. R. 17 & 593. And at any rate, by January 2021, the record indicates she was not ambulating with an assisted device. R. 17 & 625. Franklin also asserts that in June 2020 she reported experiencing migraine headaches daily, but her medical records do not show any complaints of migraine headaches from June 9, 2020, through at

17

least September 21, 2020. R. 547, 584, 600–02 & 624.  And while there may be evidence of some clinical abnormalities that could support Franklin's subjective complaints, the court is mindful that it may not "re-weigh the evidence or substitute [its] judgment for that [of the Commissioner] . . . even if the evidence preponderated against the decision." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citation and internal quotation marks omitted).  Instead, the court must determine whether substantial evidence supports the ALJ's credibility assessment of Franklin's subjective complaints of pain—not "whether [the] ALJ could have reasonably credited [Franklin's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).  The court cannot conclude that the ALJ was clearly wrong to discredit Franklin's complaints.

In sum, the ALJ properly evaluated Franklin's subjective complaints of pain consistent with the Eleventh Circuit pain standard.  The ALJ determined that Franklin had underlying medical conditions that could have satisfied the pain standard but rejected the alleged severity of the symptoms associated with those conditions.  The ALJ articulated his reasons for discounting Franklin's subjective pain allegations and substantial evidence supports his reasons for doing so. *See Foote*, 67 F.3d at 1562 ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

Lastly, the ALJ correctly considered the consistency of Franklin's statements with the remainder of the evidence. *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017). The ALJ's determinations are supported by substantial evidence and Franklin's claims are without merit.

## V. CONCLUSION

For these reasons, the court finds that the Commissioner's decision is supported by substantial evidence and is based upon the proper legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on September 26, 2023.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE